# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SCANCOMM LLC,

    Plaintiff,

    v.

BLOCK, INC.,

    Defendant.

CIV. NO. 1:24-CV-00867-VMC

# DEFENDANT BLOCK, INC.'S REPLY BRIEF
# IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO
# <u>CLAIM PATENT ELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101</u>

## TABLE OF CONTENTS

I.    ScanComm's response confirms that the claims are ineligible under
      binding precedent..................................................................................2

      A.    "Private communication" is irrelevant to eligibility because it is
            not claimed.  ...........................................................................3

      B.    "Private communication," even if it were claimed, is abstract. ...........4

      C.    The claims are purely result-oriented and do not describe any
            improved technological means of enabling "private
            communication." ...................................................................7

      D.    The claims' invocation of servers, applications, and QR codes
            cannot render them eligible. ...............................................10

II.   ScanComm identifies no disputed issues of fact or claim construction
      that bear on the eligibility analysis. ...............................................10

III.  *Alice* is binding precedent and thus controls unless and until the
      Supreme Court says otherwise. ....................................................13

IV.   Further amendments to the complaint would be futile.................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton*,
   521 U.S. 203 (1997)...........................................................................................14

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
   967 F.3d 1285 (Fed. Cir. 2019) ....................................................................9, 10

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ........................................................................12

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ...................................................................11, 12

*Beteiro, LLC v. DraftKings Inc.*,
   104 F.4th 1350 (Fed. Cir. 2024) .....................................................................6, 7

*Bilski v. Kappos*,
   561 U.S. 593 (2010)...........................................................................................14

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
   113 F.4th 1359 (Fed. Cir. 2024) .......................................................................10

*Caselas, LLC v. VeriFone, Inc.*,
   624 F. Supp. 3d 1328 (N.D. Ga. 2022).............................................................15

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) ........................................................................12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ..........................................................................15

*Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*,
   206 F.3d 1440 (Fed. Cir. 2000) ..........................................................................3

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ......................................................................1, 4

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)...........................................................................................14

*Encoditech, LLC v. Citizen Watch Co. of America, Inc.*,
  2019 WL 2601347 (W.D. Tex. June 25, 2019) ...................................................11

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ............................................................................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019)................................................................................................13

*Implicit, LLC v. Home Depot U.S.A., Inc.*,
  676 F. Supp. 3d 1312 (N.D. Ga. 2023)................................................................15

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
  50 F.4th 1371 (Fed. Cir. 2022) ..............................................................................6

*Intellectual Ventures II LLC v. FedEx Corp.*,
  2018 WL 7823098 (E.D. Tex. May 10, 2018) ....................................................8, 9

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  607 F. Supp. 3d 464 (D. Del. 2022)......................................................................12

*Koninklijke KPN N.V. v. Gemalto M2M*,
  942 F.3d 1143 (Fed. Cir. 2019) ..............................................................................8

*Le Roy v. Tatham*,
  55 U.S. 156 (1852)................................................................................................13

*Recentive Analytics, Inc. v. Fox Corp.*,
  692 F. Supp. 3d 438 (D. Del. 2023)......................................................................15

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ............................................................................4, 5

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ...........................................................1, 5, 6, 9, 10

*ThroughTek Co. v. Reolink Innovation Inc.*,
  2024 WL 1701841 (D. Del. Apr. 19, 2024) ...........................................................9

**Statutes**

35 U.S.C. § 101 .................................................................................7, 11, 13, 15

Federal Arbitration Act § 2 ....................................................................................13

ScanComm does not and cannot dispute that the concept of connecting two people using a QR code, as claimed in the '878 patent, is an abstract idea under *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017). Instead, ScanComm impermissibly attempts to import into the '878 patent claims a limitation that is just not there: storing "private" information on a server instead of in the QR code itself so as to allow "communication between . . . users without the first user knowing the second user's real-world contact information." ECF No. 22 ("ScanComm Br.") 1. Even if ScanComm could redraft the claims this way—which it cannot—the outcome would be the same: an abstract idea ineligible for patent protection. The patent does not disclose this newly conceived pseudonymous communication or describe any new technological means that could implement it. It would be simply a *result* purportedly accomplished by an abstract arrangement of information.

There are no "disputed issues of claim construction and fact" here. *Contra* ScanComm Br. 1. ScanComm's arguments fail for *legal* reasons. Unclaimed features are irrelevant to eligibility. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012). And claims that recite the use of conventional computer technology to accomplish a particular result are abstract. *See Secured Mail*, 873 F.3d at 912. ScanComm's arguments notwithstanding, the '878 patent claims do just that: they describe nothing more than using generic QR codes and servers to accomplish the

*result* of allowing two people to communicate.

## I.    ScanComm's response confirms that the claims are ineligible under binding precedent.

Claim 19—the only claim mentioned in ScanComm's complaint—recites four steps that are carried out using a mobile application: scanning a code symbol, extracting information from the code symbol to identify a second user, using that information to connect the two users, and sending the first user the second user's contact information. ECF No. 19 ("Block Br.) 5–6. In other words, the claims are directed to using a QR code to allow two people to communicate. *Id.* at 10–11. That is an abstract idea under binding Federal Circuit precedent. *Id.* at 10–16.

ScanComm does not dispute the legal point that communication via QR code is not a patent-eligible invention. Instead, ScanComm tries to recast the '878 patent claims, arguing that they require storing "real-world contact information" on a "secure server" instead of in the QR code itself and thereby enable users to communicate without sharing "real-world contact information"—which ScanComm calls "private communication." *E.g.*, ScanComm Br. 1–2, 5–6.[1] But "private

---

[1] ScanComm's repeated references to "real-world contact information" are difficult to understand. "[T]elephone numbers or email addresses," *id.* at 3, are no more (or less) "real-world" than a QR code that allows for direct communication; all are a form of identifying information that allows one user to contact another. What ScanComm really seems to mean is that the invention here is the concept of being able to keep some (unspecified) amount of information private while still

communication" is not claimed (indeed, ScanComm *concedes* it is not required by the only claim asserted in the complaint) and is itself an abstract idea. The only thing actually claimed in this patent is the *result* of communicating, accomplished using generic QR code technology.

### A. "Private communication" is irrelevant to eligibility because it is not claimed.

ScanComm concedes that the independent claims do not require keeping "real-world contact information" private. ScanComm concedes this explicitly, acknowledging that "the contact information received according to the independent claims *could be real-world contact information like an e-mail address or telephone number*," ScanComm Br. 7 (emphasis added), and implicitly, by asserting (at 12) that dependent claims 3 and 17 do impose this requirement. If claims 3 and 17 add the concept ScanComm now contends is inventive, then, under the doctrine of claim differentiation, the independent claims *lack* that concept. *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446–47 (Fed. Cir. 2000).

That concession alone suffices to resolve this motion. The only claim mentioned in ScanComm's complaint is independent claim 19. And ScanComm's only eligibility arguments rely on a feature that, by ScanComm's own admission, is

---

being able to communicate.

not required by that claim. The Court should dismiss for that reason alone.

In any event, ScanComm's assertion that claims 3 and 17 require storing "private information" instead of in the QR code itself is belied by their plain language. Those claims merely specify that the secure server uses the information in the QR code to access "one or more of: information associated with a network address of the second user, information associated with the unique communication profile of the second user, or the contact information of the second user." *E.g.*, '878 patent, 8:49–56 (claim 3). These claims do not place any restriction on the information that is (or is not) stored within the QR code itself; they merely provide a disjunctive list of information that must be accessed by the secure server. Because the feature upon which ScanComm relies is not required by these claims, it cannot impart eligibility. *See* Block Br. 23; *Dealertrack*, 674 F.3d at 1334.

**B.    "Private communication," even if it were claimed, is abstract.**

Even if the claims did require storing "real-world contact information" (whatever that means) on a secure server as opposed to in the QR code itself, that is—as Block has already explained—merely "'a purportedly new arrangement of generic information,' which is itself an ineligible abstract idea." Block Br. 24 (quoting *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1380–81 (Fed. Cir. 2022)); *see Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir.

2023) ("distribution of information is an abstract idea," even where "the information being distributed is of a particular variety"). ScanComm has no answer to this point, other than to simply assert (at 14) that "storing information at a specific location" is somehow a technological advance. It is not. ScanComm identifies no "improvement in computer functionality" accomplished by the claims; instead, the claims simply use generic computer components and techniques (like servers, applications, and communication of information) "as a tool" to arrange information so as to keep certain unspecified contact information private during communication. *Sanderling*, 65 F.4th at 703.

Indeed, *Secured Mail* rejected an argument analogous to the one ScanComm makes here. The patents there involved creating a "sender-generated identifier" by "combining various pieces of data, such as a unique identifier, sender data, recipient data and shipping method data." 873 F.3d at 911. The Federal Circuit held that this identifier was insufficient to render the claims eligible because the claims did "not provide any specific showing of what is inventive about the identifier or about the technology used to generate and process it"; instead, "only the information itself [was] unique or new." *Id.* at 911–12. Just so here. The '878 patent claims do not describe any improved technological means for keeping sensitive information private during electronic communication; instead, the allegedly "inventive[]" aspect

5

of the claims is to store a particular type of information (namely, "private" information) on a server instead of embedding it in a QR code. ScanComm Br. 14. And, as *Secured Mail*, *Zillow*, and myriad other Federal Circuit cases teach, arrangements of information—even purportedly innovative ones—are not patent-eligible inventions.

Even if binding precedent did not foreclose the argument that communicating without revealing private information were a patent-eligible advance, common sense would. Humans have been devising means of anonymous communications for centuries—usernames for online chat rooms, payphones, Valentine's cards from secret admirers, and ransom notes, to name a few examples. "A claimed method's similarity to 'fundamental . . . practices long prevalent'" is a telling "clue that the claims may be abstract and unpatentable." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024); *see Secured Mail*, 873 F.3d at 912 (rejecting argument that claimed "bi-directional communication line" was inventive because "the idea of responding to or inquiring about mail using a personalized identifier through the use of a marking (such as an account number printed on a utility bill, or a check number printed on a check) has long been a conventional concept").

Finally, contrary to ScanComm's argument (at 13–14), this is not a factual dispute about whether storing private information on a secure server instead of in a

QR code was "well-known" or "conventional." Even accepting for argument's sake the dubious proposition that this particular arrangement of information was new, it cannot render the claims eligible because the claims do not require it and because arranging information is abstract.[2]

### C. The claims are purely result-oriented and do not describe any improved technological means of enabling "private communication."

The '878 claims are ineligible for the additional reason that they recite merely the *result* of communicating (or, allegedly, "privately communicating") using QR codes. Claims such as these—those "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results . . . . are almost always found to be ineligible for patenting under Section 101." *Beteiro*, 104 F.4th at 1356.

Claim 19 decidedly does *not* "recite[] the manner in which the steps of

---

[2] For completeness, Block observes that ScanComm's arguments about the novelty of using QR codes to enable "private communication"—in addition to being irrelevant to eligibility—are unsupported by the patent. Contrary to ScanComm's assertions (e.g., at 3, 10, 12), the patent does not state that "conventional" QR codes "typically embodied directly the information encoded therein, such as addresses, URLs, or login credentials." The cited portion of the specification ('878 patent, 2:51–3:10) simply provides a high-level description about how QR codes work; it says nothing about the specifics of the "information encoded" in conventional QR codes. So there is no basis for ScanComm's suggestion that its invention departed from the prior art vis-à-vis the nature of information stored in the QR code.

'extracting,' 'establishing,' and 'receiving' are executed." *Contra* ScanComm Br. 17. The claim merely states that these steps are performed by a "mobile application device." The claim is "verbose," *id.*, but it provides no technical detail about how the steps are accomplished. Verbosity and specificity are not the same thing. And this case is therefore unlike *Koninklijke KPN N.V. v. Gemalto M2M*, 942 F.3d 1143 (Fed. Cir. 2019), where—as ScanComm admits (at 17)—the claims "specifically recited" a particular manner of processing data by "modifying the permutation applied to different data blocks," which "enabl[ed] prior art error detection systems to catch previously undetectable systematic errors." 942 F.3d at 1153.

The claims' lack of detail also renders inapposite the district-court decision in *Intellectual Ventures II LLC v. FedEx Corp.*, 2018 WL 7823098 (E.D. Tex. May 10, 2018), upon which ScanComm heavily relies. The claims at issue in that case recited a "process whereby the information needed to decode specialized, tagged barcodes [was] packaged into a specific, multi-layer data structure" that allowed for the transfer of barcode data between businesses and consumers using different hardware and software applications. *Id.* at *4. They were therefore actually "directed towards a technological solution to a technological problem." *Id.* The '878 patent claims, in contrast, merely use generic barcodes and generic servers to accomplish the *result* of communicating without sharing information the user wants to keep private. They

8

are thus like the claims at issue in *Secured Mail*, which employed "well known and conventional ways to allow generic communication between a sender and recipient using generic computer technology." 873 F.3d at 912; *see also ThroughTek Co. v. Reolink Innovation Inc.*, 2024 WL 1701841 (D. Del. Apr. 19, 2024) (cited at Block Br. 13–15) (relying on *Secured Mail* to invalidate a patent "directed to the abstract idea of using an image pattern . . . to convey identification information needed to establish a communication link").[3]

ScanComm's suggestion (at 17–18) that this is an issue of enablement rather than eligibility misunderstands the law. ScanComm "fail[s] to distinguish two different 'how' requirements in patent law." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2019). The first is eligibility: "the claim itself . . . must go beyond stating a functional result; it must identify 'how' that functional result is achieved by limiting the claim scope . . . to concrete action." *Id.* "The second, distinct 'how' requirement applies to the specification, not the claim: once the required concrete . . . actions are set out in the claim, the specification must set forth enough information for a relevant skilled artisan to be able to . . . perform the claimed actions. This is the enablement requirement, which is distinct from the

---

[3] Notably, *ThroughTek* reversed a magistrate judge's decision that had relied on *Intellectual Ventures II LLC v. FedEx Corp.* to find the patent at issue eligible.

eligibility requirement." *Id.* "[N]either requirement replaces the other." *Id.* And the issue before the Court is that the '878 patent claims do not satisfy the first.

> ### D.    The claims' invocation of servers, applications, and QR codes cannot render them eligible.

To the extent ScanComm means to suggest that the claims' reference to a "'code symbol' and 'secure server'" are sufficient to render them eligible, ScanComm Br. 18, that argument fails. A "code symbol" is just a QR code, which is conventional computer technology. *See Secured Mail*, 873 F.3d at 912. And the '878 patent "does not claim to improve server technology, but instead discloses using conventional server capabilities," such as storing, "retrieving, and transmitting content," *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1370 (Fed. Cir. 2024) (cleaned up). "[C]laim elements or combinations of claim elements" like these "that are routine, conventional or well-understood cannot transform the claims" into a patent-eligible invention. *Id.*

## II.    ScanComm identifies no disputed issues of fact or claim construction that bear on the eligibility analysis.

Relying on a district-court decision from the Northern District of Oklahoma, ScanComm asserts (at 8) that subject-matter eligibility is "inherently ill suited to adjudication at the pleading stage, particularly when the dispute turns on whether the claims are impermissibly abstract." The Federal Circuit has said otherwise,

"repeatedly recogniz[ing] that in many cases it is possible and proper to determine patent eligibility" on the pleadings. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (collecting cases).

It is true, to be sure, that "plausible factual allegations may preclude dismissing a case under § 101" if those allegations, taken as true, could establish that the claims involve unconventional technology. *Id.* But ScanComm has not made— and cannot make—any such allegations here. Instead, the crux of ScanComm's argument against dismissal is its contention that the concept of storing sensitive information on a secure server instead of in a QR code to enable so-called "private communication" was inventive. *See, e.g.*, ScanComm Br. 10. That argument fails as a legal (not factual) matter for the reasons explained above: this allegedly inventive arrangement of information is not required by the claims and is itself an abstract idea in any event.

None of the cases that ScanComm cites supports its argument that storing sensitive information on a generic server is plausibly inventive. In *Encoditech, LLC v. Citizen Watch Co. of America, Inc.*, 2019 WL 2601347 (W.D. Tex. June 25, 2019) (cited at ScanComm Br. 10, 20), the claims required the use of "common key encryption," which the patentee alleged was an unconventional method of ensuring secure communication. *Id.* at *3. In *Bascom Global Internet Services, Inc. v. AT&T*

11

*Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) (cited at ScanComm Br. 21), the court found that the use of a "filtering tool at a specific location" that gave the "tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP server" was an inventive concept. *Id.* at 1350. In *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) (cited at ScanComm Br. 21–22), the claims required using hypertext transfer protocol at a specific location and "establishing a paired connection *before* transmitting data," which the patentee plausibly alleged was inventive. *Id.* at 1318. And, in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) (cited at ScanComm Br. 22), the patentee plausibly alleged that the claimed computer program used a novel "distributed architecture" that could more efficiently collect and process data. *Id.* at 1291–92, 1300.

ScanComm identifies no analogous feature of the '878 patent that improves computer technology. The patentee does not purport to have created an inventive kind of QR code, mobile application, or server, or an inventive "arrangement" of any of those components. *Contra* ScanComm Br. 22. Instead, the claimed invention simply uses generic instantiations of these components performing their routine functions to accomplish the *result* of so-called "private communication." This is "an abstract idea implemented by technological means, rather than [] a modification of the technological means themselves." *IOENGINE, LLC v. PayPal Holdings, Inc.*,

607 F. Supp. 3d 464, 486 (D. Del. 2022). It is therefore ineligible for patenting.[4]

## III. *Alice* is binding precedent and thus controls unless and until the Supreme Court says otherwise.

ScanComm closes its brief (at 22–25) with a curious argument that the Supreme Court silently overruled *Alice* in a 2019 decision interpreting § 2 of the Federal Arbitration Act. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). As an initial matter, the "abstract-idea exception," as ScanComm calls it (at 23), is far from a new legal development: an unbroken line of Supreme Court authority dating back at least to the mid-1800s holds that "principle[s], in the abstract . . . cannot be patented." *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852). ScanComm's suggestion that the Supreme Court implicitly overruled two centuries of patent-law precedent in a 2019 arbitration case borders on the absurd.

More to the point, even if ScanComm had a credible argument that subsequent precedent has called *Alice* into question, that argument would not be properly addressed to this Court. Lower courts may not "conclude [that the Supreme Court's]

_____

[4] ScanComm's reliance (at 11) on the Patent Office's decision to allow the '878 patent claims is misplaced for reasons Block has explained. Block Br. 24–25. The Examiner did not substantively address eligibility during prosecution; the "issue under § 101" to which ScanComm refers (at 11) was obviousness-type double patenting, which is a separate legal doctrine. And, in any event, even if the Examiner had provided a reasoned analysis of the claims' eligibility, this Court would not be bound by it. *See* Block Br. 25 (collecting cases).

more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). "If a precedent of th[e Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to th[e Supreme] Court the prerogative of overruling its own decisions." *Id. Alice* is the law unless and until the Supreme Court says otherwise (perhaps best evidenced by the Federal Circuit's continued reliance on it), and a straightforward application of that case demonstrates that the '878 patent claims are ineligible.

The policy concerns that ScanComm raises (at 24) are likewise addressed to the wrong forum. If ScanComm thinks that *Alice* has improperly "created a systemic bias in the patent system disadvantaging small IP owners," those complaints must be made to the Supreme Court or Congress.[5]

---

[5] ScanComm's appeals to policy are also rather ironic given ScanComm's status as a non-practicing entity—that is, a "firm[ that] use[s] patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396 (2006) (Kennedy, J., concurring). The sum total of ScanComm's activities since its creation in May 2022 has consisted of filing seven lawsuits asserting the '878 patent against large tech companies. Many of the patents such NPEs seek to enforce are—like the '878 patent—business method patents that "raise special problems in terms of vagueness and suspect validity." *Bilski v. Kappos*, 561 U.S. 593, 608 (2010). To the extent the Supreme Court's patent eligibility jurisprudence curtails this sort of rent-seeking behavior by NPEs, that would seem a positive policy outcome, not a negative one.

## IV.    Further amendments to the complaint would be futile.

ScanComm's throwaway request (at 25) for leave to amend should be denied. ScanComm has already amended its complaint once to try to overcome the eligibility concerns raised in Block's first motion to dismiss, and its opposition brief does not identify any additional facts that ScanComm could plead to avoid dismissal. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776 (Fed. Cir. 2019) (affirming denial of leave to amend where plaintiff did not identify any alleged facts that could be pleaded that would establish the eligibility of the asserted patent).

ScanComm's failure to come forward with any relevant factual allegations is not surprising. "The claims of the patents say what they say," and amendment would therefore "not change" the eligibility analysis. *Recentive Analytics, Inc. v. Fox Corp.*, 692 F. Supp. 3d 438, 457 (D. Del. 2023); *see also Implicit, LLC v. Home Depot U.S.A., Inc.*, 676 F. Supp. 3d 1312, 1322 (N.D. Ga. 2023) (Calvert, J.) (dismissing complaint with prejudice because asserted patent was ineligible under § 101); *Caselas, LLC v. VeriFone, Inc.*, 624 F. Supp. 3d 1328, 1343 (N.D. Ga. 2022) (Calvert, J.) (same). No amount of artful pleading could alter what is plain from the face of the patents themselves: these claims are directed to the abstract idea of using a QR code to establish communication between two people. Block therefore respectfully requests that the Court dismiss the complaint with prejudice.

15

Respectfully submitted, this 27th day of September, 2024.


/s/ Joshua Weeks
Joshua Weeks
Georgia Bar No. 545063
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree St., Suite 4900
Atlanta, GA 30309-3424
Phone: 404.881.7000
Fax: 404.881.7777
Joshua.Weeks@alston.com

**Attorney for Defendant
Block, Inc.**

16

## CERTIFICATION

In accordance with L.R. 5.1C, I hereby certify that this document has been prepared in 14-point, Times New Roman font.

/s/ *Joshua Weeks*
Joshua Weeks
ALSTON & BIRD LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing document with the Clerk of Court using the CM/ECF filing system, which will automatically send e-mail notification of such filing to all counsel of record.

This 27th day of September, 2024.

/s/ *Joshua Weeks*
Joshua Weeks
ALSTON & BIRD LLC

17